**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 39**

Docket No. PH-0752-15-0475-I-1

**Scott Holton,**

**Appellant,**

**v.**

**Department of the Navy,**

**Agency.**

November 2, 2016

James G. Noucas, Jr., Esquire, Portsmouth, New Hampshire, for the
   appellant.

Penny C. Colomb and Scott W. Flood, Esquire, Portsmouth, New
   Hampshire, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal.  For the following reasons, we DENY the appellant's petition for review and AFFIRM the initial decision as MODIFIED to address his claims that the agency violated his constitutional rights.

## BACKGROUND

¶2      The agency removed the appellant, a WS-10 Rigger Supervisor in its Portsmouth Naval Shipyard, for use of an illegal drug, marijuana.  Initial Appeal File (IAF), Tab 5 at 88-90, 169-72.

¶3    On March 11, 2014, the appellant was overseeing a crane team of approximately 11 people. Hearing Transcript (HT) at 10 (testimony of T.T.). A crane team uses a crane to hoist machinery and other equipment. IAF, Tab 5 at 36. As Rigger Supervisor, the appellant was responsible for making work assignments and ensuring compliance with safe work practices. *Id.* at 36-37. He assigned a rigger in charge of the crane team. *Id.* at 92. He then proceeded to the endpoint of the lift. HT at 18, 266-68 (testimony of T.T. and the appellant). While in transit, the boom of the crane struck a building, causing approximately $30,000 in damage. IAF, Tab 5 at 42, 88. According to the appellant, he was approximately 150 yards from where the accident occurred. HT at 268 (testimony of the appellant).

¶4    That evening, agency police began a "Desk Journal," or police log, of the accident. HT at 55 (testimony of T.T.); IAF, Tab 5 at 40-41. The agency concluded that the accident was caused by improper crane operation and poor crane team execution chargeable to the crane walker, rigger, operator, and those managing or supervising the team. IAF, Tab 5 at 76. Based on the fact that a police log was being generated and the damage exceeded $10,000, the Acting Director of Lifting and Handling obtained permission from the Executive Director of the Shipyard to drug test the entire crane team. HT at 8, 53-54 (testimony of T.T.); IAF, Tab 5 at 40-41. In deciding to test the entire team, the Acting Director of Lifting and Handling applied the agency's "Crane Team Concept" to conclude that the accident was a failure by the team. HT at 53-54 (testimony of T.T.). Under the Crane Team Concept, the crane team members are responsible for "watching out for each other . . . [a]nd . . . bringing attention to what's going on" to prevent problems. HT at 45-46 (testimony of T.T.).

¶5       Citing its established post-accident testing procedures,[1] the agency required that all members of the crane team, including the appellant, provide a urine sample that evening to an agency contractor. IAF, Tab 5 at 44, 60-62, 88, 167. The appellant signed the seals for his specimen and also signed a checklist certifying that the contractor's employee, C.P., took the proper steps in the collection process. *Id.* at 77-78. Two days after the appellant provided his sample, the agency issued him written notice explaining that the reason for the drug test was the March 11, 2014 accident. *Id.* at 79.

¶6       The appellant's sample was tested twice and found positive for marijuana both times. *Id.* at 81, 167. On March 31, 2015, following the first positive test result, the agency placed him in a paid, nonduty status. *Id.* at 81, 85. On May 15, 2015, the agency proposed his removal. *Id.* at 88-90. After the appellant responded both orally and in writing, the Executive Director issued a decision letter, removing the appellant effective July 8, 2015. *Id.* at 91-97, 169-72.

---

[1] The pertinent section of the agency's drug-testing program is NAVSHIPYD PTSMH INSTRUCTION 12792.2B, Enclosure (1) 5.e, which states:

> e. Post Accident Testing of employees, based on a police report, suspected of having caused or contributed to an accident if there is a death or personal injury resulting in hospitalization, or if there is property damage in excess of $10,000.
>
> (1) Criteria. Employees may be subject to testing when, based upon circumstances of an on-the-job accident or unsafe, on-duty, related activity, their actions are reasonably suspected of having caused or contributed to an accident or unsafe practice that meets either of the following criteria:
>
> > (a) The accident or unsafe practice results in a death or personal injury requiring admission to a hospital, or
> >
> > (b) The accident or unsafe practice results in damage to government or private property estimated to be in excess of $10,000.

IAF, Tab 5 at 60-61.

¶7        The appellant filed an appeal.  IAF, Tab 1.  After holding a hearing, the administrative judge affirmed the appellant's removal.  IAF, Tab 38, Initial Decision (ID).  He found that the appellant's drug test was valid and that C.P. did not combine two urine samples, as the appellant claimed.  ID at 2-3.  The administrative judge also found that the agency established its charge that the appellant used an illegal drug.  ID at 2-4.  The administrative judge denied the appellant's affirmative defense of harmful error.  ID at 4-7.  First, he found that the agency properly selected the appellant for testing based on his role as the first-line supervisor of the employees operating the crane at the time of the accident.  ID at 6.  Second, he found that the agency's failure to provide the appellant with advance written notice of why he was being tested, as required by its drug-testing program, was harmless because it did not affect the outcome of the test.  ID at 6-7.

¶8        The administrative judge further found that the penalty of removal was reasonable under the circumstances, given that the appellant's work at the time involved actively overseeing the lifting and moving of a 60,000-pound load through a crowded shipyard.[2]  ID at 7-9.  He did not address the appellant's arguments that the agency's application of its drug-testing program violated the Constitution.  IAF, Tab 24 at 5.

¶9        In his petition for review, the appellant reiterates his claim that his drug test was invalid.  Petition for Review (PFR) File, Tab 1 at 26-28.  He also argues that the agency violated both its drug-testing program and the Constitution because it lacked reasonable suspicion that he either caused or contributed to the

---

[2] The appellant does not challenge the administrative judge's finding that removal was a reasonable penalty.  ID at 7-9.  We decline to disturb this finding on review.  *See Patterson v. Department of the Air Force*, 77 M.S.P.R. 557, 563-64 (deferring to an agency's determination to remove an appellant for use of illegal drugs because, in pertinent part, his position as an aircraft mechanic required operating a crane that lifted heavy equipment), *aff'd*, 168 F.3d 1322 (Fed. Cir. 1998) (Table).

accident. *Id.* at 16-18, 20-24. He contends that the agency failed to afford him due process and committed harmful error in the notification and administration of the drug-testing program. *Id.* at 18-19, 24-26. He argues that the deciding official's role in deciding to test him indicated that he was predisposed to find against him. *Id.* at 26-29. The agency has responded to the petition for review, and the appellant has replied. PFR File, Tabs 4-5.

## ANALYSIS

### The administrative judge properly found that the agency proved the charge of illegal drug use.

¶10 On review, the appellant argues, as he did below, that his drug test was invalid because C.P. did not properly collect his sample. PFR File, Tab 1 at 26-28.

¶11 When an agency relies on a positive drug test to take an adverse action against an employee, the agency must prove by preponderant evidence[3] that the test was valid. *E.g.*, *Forte v. Department of the Navy*, 123 M.S.P.R. 124, ¶ 8 (2016). To meet its burden, the agency must establish that the urine sample that tested positive was the appellant's by showing that the chain of custody of the sample was maintained and verifiable. *Id.* An alleged violation of the agency's drug-testing procedures is reviewed under the harmful error standard. *Id.*, ¶ 9. Under this standard, reversal is only warranted if the appellant proves that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.*

¶12 Regarding the substantive charge, use of an illegal drug, and the validity of the appellant's positive test, the administrative judge found that C.P. properly

---

[3] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

collected the appellant's urine sample. ID at 3. Although C.P. did not specifically recall collecting the appellant's sample, he testified to the procedures he regularly followed. HT at 137-44 (testimony of C.P.). The appellant maintains on review that he was unable to provide a sufficient volume of urine to be tested in his first attempt and that C.P. combined that urine with the urine from his similarly insufficient second attempt, in violation of agency policy. PFR File, Tab 1 at 26-28. The administrative judge considered the appellant's testimony in this regard but found no error in C.P.'s collection of the appellant's specimen. ID at 2-3. He considered C.P.'s demeanor while testifying at hearing, his lack of interest in the outcome of the appeal, and the plausibility of his account. ID at 3. He also found that C.P.'s testimony was consistent with the fact that the appellant signed the seals for his specimen and a checklist certifying to its proper collection. *Id.*; IAF, Tab 5 at 77-78.

¶13 The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant's arguments on review do not present such reasons. For example, he disagrees with the administrative judge's assessment of C.P. as lacking any interest in the outcome of the appeal, and he points to the fact that C.P. did not specifically recall collecting his sample. PFR File, Tab 1 at 27. The appellant also argues that his own testimony was "clear and consistent," he lacked sufficient time to review the seals and certifications for his samples, and he "signed where he was told to." *Id.* We find that the administrative judge considered the proper factors in finding the appellant provided a single, valid urine sample. *See Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (listing the factors an administrative judge must consider in resolving credibility issues, including a witness's bias or lack of bias, the consistency of his account with other evidence,

the inherent improbability of his version of events, and his demeanor); *see also* Fed. R. Evid. 406[4] (permitting the use of "a person's habit or an organization's routine practice" to prove compliance with that habit or practice "on a particular occasion").

¶14 Importantly, the appellant's signature on the specimen checklist explicitly attests to the fact that "all of the steps" listed on the form were completed. IAF, Tab 5 at 77. Similarly, he signed the Federal Drug Testing Custody and Control Form, certifying that each specimen bottle was sealed in his presence. *Id.* at 78. Therefore, we agree with the administrative judge that the appellant's challenges to the collection procedures are unpersuasive. ID at 3.

¶15 We also agree with the administrative judge that the appellant's other procedural challenges do not provide a basis for reversing his removal. ID at 6-7.

¶16 First, the appellant alleges that the agency failed to obtain a police report before deciding to test him. PFR File, Tab 1 at 24-25; IAF, Tab 24 at 4. He asserts that the police Desk Journal of the accident was not such a report but rather a chronology of the events. *Id.* The agency argues on review that a police report is only required for accidents involving death or personal injury. PFR File, Tab 4 at 25; IAF, Tab 5 at 60; HT at 170 (testimony of R.T.). We find it unnecessary to resolve the issue of whether a police report was required because we find that the Desk Journal, by providing an account of the events in question, is sufficient to meet the report requirement.[5] IAF, Tab 5 at 40-41; Merriam-Webster's Collegiate Dictionary 990 (10th ed. 2002) (defining a report as "a usu[ally] detailed account or statement").

---

[4] The Board may use the Federal Rules of Evidence as nonbinding guidance. *Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 10 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011).

[5] We modify the initial decision to the extent that it did not specifically address this argument.

¶17        Second, the appellant argues that the agency failed to provide advance written notice of the test.  PFR File, Tab 1 at 26.  The agency's drug-testing program provides that "management officials will notify the employee of the test and issue . . . specific written notice that the employee is being tested because of the accident or unsafe practice."  IAF, Tab 5 at 62.  The agency provided this notice 2 days after the test.  *Id.* at 79-80.  We agree with the administrative judge that the appellant did not prove that this notice deficiency changed the results of his drug test.  ID at 6-7; *see Forte*, 123 M.S.P.R. 124, ¶¶ 17-19 (finding that the appellant failed to prove that the agency likely would have reached a different conclusion in the absence of a urine specimen collector's alleged error of not having him initial his vial seals).

¶18        Finally, the appellant argues for the first time on review that the agency did not compile the written documents that are required under the agency's drug-testing program.  PFR File, Tab 1 at 25; IAF, Tab 24 at 4-5.  The appellant does not allege that this argument is based on new and material evidence, and thus we need not address it.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board will generally not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).  Regardless, we find that any failure by the agency to "gather and document all information, facts, [and] circumstances" prior to testing, as required by its drug-testing program, was harmless.  IAF, Tab 5 at 42-43, 57.  Before ordering testing, the Acting Director of Lifting and Handling examined the scene of the accident, spoke with the crane team, and conducted a preliminary assessment of the cost of the damage.  *Id.* at 42-43.  The appellant has not proven that collecting documents would have caused the agency to forgo his testing, and thus he has not shown harmful error.

¶19     Therefore, we agree with the administrative judge that the agency proved its charge of illegal drug use, and the appellant did not meet his burden to prove harmful error.

The administrative judge properly found that the agency had a reasonable suspicion that the appellant caused or contributed to the accident.

¶20     The appellant reiterates on review that the agency did not have reasonable suspicion of drug use as required by the Fourth Amendment and its drug-testing program.  PFR File, Tab 1 at 15-20.  We disagree.

¶21     Mandatory drug testing, when conducted by the Federal Government, is a search and seizure within the meaning of the Fourth Amendment and must be reasonable to pass constitutional muster.  *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665 (1989); *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 616-19 (1989).  While a search generally must be supported by a warrant issued upon probable cause to comply with the dictates of the Fourth Amendment, such a requirement is not absolute, and neither a warrant, probable cause, nor individualized suspicion is essential in every case to prove reasonableness.  *Shelledy v. Department of Transportation*, 49 M.S.P.R. 257, 261 (1991) (citing *Skinner*, 489 U.S. at 618-33), *aff'd*, 956 F.2d 1173 (Fed. Cir. 1992).  Employing the analysis identified by the Supreme Court in *Skinner*, the Board has observed that post-accident drug testing, performed without a warrant or a showing of individualized suspicion, is a reasonable intrusion into an employee's privacy rights, if the regulations afford the employer limited discretion, the test serves compelling safety interests, and the employee has a diminished expectation of privacy because of his employment in an industry that is heavily regulated for safety.  *Id.* at 262 (citing *Skinner*, 489 U.S. at 627-28, 633-34); *see Hatley v. Department of the Navy*, 164 F.3d 602, 604 (Fed. Cir. 1998) (recognizing that the Government may generally subject "employees responsible for the safety of others" to suspicionless drug testing).  When these requirements are met, an agency can test an employee even if he does not occupy

a testing-designated position. *See National Treasury Employees Union*, 489 U.S. at 667-77 (upholding a drug-testing requirement for employees who applied for promotion to drug-interdiction positions or to positions that required carrying a firearm).

¶22    In *Skinner*, the Supreme Court upheld regulations requiring railroads to test employees "directly involved" in certain accidents, including accidents resulting in death or property damage exceeding $50,000. 489 U.S. at 609, 618-33. It further upheld regulations permitting railroads to conduct testing based on "a 'reasonable suspicion' that an employee's acts or omissions contributed to the occurrence or severity of [an] accident or incident . . . or . . . in the event of certain specific rule violations." *Id.* at 611, 618-33.

¶23    The agency's post-accident testing procedures under its drug-testing program are similar to the permissive drug-testing regulations upheld by the Court in *Skinner*. Like those regulations, the agency's procedures allow for testing employees "reasonably suspected of having caused or contributed" to certain accidents. IAF, Tab 5 at 60-61. We do not agree with the appellant that "contributed to," as used in the procedures, is "overbroad and vague," given that this same term was used in the regulations upheld by the Court in *Skinner*.[6] PFR File, Tab 1 at 23.

¶24    Similarly, the activity involved here, the lifting and moving of a 60,000-pound load by crane, is "fraught with such risks of injury to others that

---

[6] In support of his argument, the appellant relies on *Plane v. United States*, 750 F. Supp. 1358, 1373-74 (W.D. Mich. 1990), in which a U.S. district court judge found that a drug-free workplace plan that called for testing all employees "involved" in accidents was overly broad. PFR File, Tab 1 at 15-17. However, we find the agency's program is appropriately tailored to employees that are reasonably suspected of having caused or contributed to accidents. Therefore, we are not persuaded by the analogy to the plan at issue in *Plane*.

even a momentary lapse of attention can have disastrous consequences." *Shelledy*, 49 M.S.P.R. at 262 (quoting *Skinner*, 489 U.S. at 628). Therefore, the agency's use of its drug-testing program to test the appellant posed only a limited threat to his privacy rights but, by contrast, directly served a compelling Government safety interest.

¶25    The appellant alleges that he had delegated the responsibility for the crane lift to a rigger in charge, and therefore he could not be tested because he did not engage in a "triggering event" that "caused" the accident. PFR File, Tab 1 at 20-24. He argues that the agency improperly employed its Crane Team Concept to test him, despite the lack of any causal link between him and the accident, essentially holding him strictly responsible for the accident. *Id.* at 21-22.

¶26    However, in his petition for review, the appellant concedes the circumstances that both bring him within the purview of the agency's post-accident testing procedures and also show that the agency reasonably suspected that he contributed to the accident. The triggering event under the agency's drug-testing program was the boom of the crane striking a building, causing more than $10,000 in property damage. IAF, Tab 5 at 42-43, 60; *see Skinner*, 489 U.S. at 630 (using the phrase "triggering event" to refer to an incident that requires or permits regulatory drug and alcohol testing). The appellant not only supervised the crane team but he also briefed the team before appointing a rigger in charge and moving on to the endpoint of the lift. PFR File, Tab 1 at 21. The appellant argues that there is no evidence that he violated any rule, regulation, or instruction. *Id.* However, the agency's drug-testing program does not require such a showing. The proper standard to be subject to post-accident testing under the agency's rules is whether the agency had a reasonable suspicion that the appellant could have caused or contributed to the accident. IAF, Tab 4 at 60-61.

¶27     Because the record reflects that the appellant instructed the crane team immediately before the accident and was still actively involved in the operation when the accident occurred, we find that it was reasonable for the agency to suspect that he could have caused or contributed to the accident and to drug test him.

The agency did not deny the appellant due process in selecting him for testing or appointing its deciding official.

¶28     The appellant argues on review that the agency denied him due process because it did not provide advance notice that it would use the Crane Team Concept to select him for post-accident drug testing.  PFR File, Tab 1 at 21-23. He again raises the agency's failure to provide him with advance written notice of his drug test, this time arguing that the failure was a denial of due process.  *Id.* at 26; ID at 6-7; IAF, Tab 5 at 62.  Although it is unclear whether the appellant raised any due process arguments below, we exercise our discretion to address them here.  IAF, Tabs 24, 29; *see Powers v. Department of the Treasury*, 86 M.S.P.R. 256, ¶ 10 n.3 (2000) (finding that an administrative judge had the right to raise a due process issue sua sponte to address whether the alleged error caused a manifest injustice).  However, we find that the appellant had no right to due process regarding the agency's drug-testing decision.

¶29     Tenured public employees have a property right in continued employment. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-39 (1985). Therefore, they cannot be deprived of this right without minimum due process of law, i.e., prior notice and an opportunity to respond.  *Id.* at 546.  This right does not extend, however, to an agency's discretionary decision to revoke a previously granted privilege.  *See Department of the Navy v. Egan*, 484 U.S. 518, 528-29 (1988) (observing that an employee does not have a right to a security clearance because the granting of such a clearance is a discretionary act); *Gargiulo v. Department of Homeland Security*, 727 F.3d 1181, 1184-85 (Fed. Cir. 2013) (finding that, because an employee does not have a property interest in a security

clearance, its revocation does not implicate due process). Here, as a consequence of his positive drug test, the appellant was placed in paid, nonduty status, effectively revoking his privilege to report to work. IAF, Tab 5 at 85. We find, in light of the fact that he continued to receive pay, that the appellant had no property interest in reporting to work, and the agency was entitled to revoke this privilege without affording him due process.

¶30    Further, the appellant was not deprived of his right to notice and an opportunity to respond to the removal that resulted from his positive drug test. *Cf. Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 15 (2014) (finding that the Board is authorized to consider a claim that an agency denied due process in taking an adverse action based on a security clearance determination). Here, the appellant was provided with the requisite notice of the proposed removal and an opportunity to respond to the deciding official. IAF, Tab 5 at 88-97, 169-72; *see Loudermill*, 470 U.S. at 546. The appellant argues that the deciding official was biased to such an extent that his selection violated due process. PFR File, Tab 1 at 29. An employee has a due process right to have an unbiased decision maker adjudicate his case. *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 9 (2013). To establish a due process violation based on the identity of a deciding official, an appellant must assert specific allegations indicating that the agency's choice of deciding official made the risk of unfairness to the appellant intolerably high. *Id.*

¶31    To support his claim of bias, the appellant argues that it was patently unfair to use as the deciding official the same individual who granted permission to the Acting Director of Lifting and Handling to test the appellant. PFR File, Tab 1 at 28-29. However, we disagree that this involvement presents an intolerably high risk of unfairness to the appellant sufficient to support a finding of a due

process violation.[7]  *See Lange*, [119 M.S.P.R. 625](), ¶ 10 (finding that a deciding official's knowledge of and involvement in the investigation that led to the appellant's removal did not violate due process).  Other than rearguing that he should not have been selected for testing, which we already have addressed above, the appellant does not substantiate his claim that the deciding official "was unwilling to change his mind and fully consider all evidence of record."  PFR File, Tab 1 at 29.  Therefore, we decline to find any due process violation.

¶32        Accordingly, we affirm the initial decision as modified by this Opinion and Order.

ORDER

¶33        This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) ([5 C.F.R. § 1201.113]()(c)).

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

---

[7] The appellant does not argue that the agency's selection of a deciding official was harmful error.  PFR File, Tab 1 at 28-29.  Nonetheless, we have considered whether such an error occurred.  *See Stone v. Federal Deposit Insurance Corporation*, [179 F.3d 1368](), 1377-78 (Fed. Cir. 1999) (observing that an employee is entitled not only to minimum due process but also to the protections afforded by statute, regulation, and agency procedures).  We find no evidence that the agency violated any statute, regulation, or agency policy.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm.  Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.

The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.